IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4: 11 CR 168 LRR |
| | ) | |
| MARTIN T. SIGILLITO, | ) | |
| | ) | |
| Defendant. | ) | |

GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS
COUNTS 10 THROUGH 15 OF THE INDICTMENT (DOC. 102)

Comes now the United States of America, by and through its undersigned counsel, and submits its response to Sigillito's motion to dismiss counts 10 through 15 of the indictment (Doc. 102), based on his claim that the mailings alleged in the mail fraud counts were not mailings in furtherance of an essential step in the scheme to defraud and that they were not for the purpose of executing the scheme. The Government respectfully suggests that these claims are without merit and the defendant's motion should be denied. The Government makes the following suggestions in support of its opposition to the defendant's motion to dismiss.

FACTUAL BACKGROUND

On April 28, 2011, Sigillito was charged in a 22-count indictment with mail and wire fraud, conspiracy to commit mail and wire fraud, and money laundering. Paragraphs 1 through 25 of count one describe the scheme and artifice to defraud and obtain money and property. Counts 10 through 15 allege substantive mail fraud charges and specifically incorporate paragraphs 1 through 25 of count one. More specifically, counts 10 through 13 allege mailings of monthly statements of investments, which included the British Loan Program ("BLP") loans that are the subject of the fraudulent investment scheme. The monthly statements were mailed

by Enterprise Bank & Trust to specific victims. Contrary to what defendant claims in his motion, counts 14 and 15 do not allege the same mailings from Enterprise Bank & Trust to victims. The mailings alleged under counts 14 and 15 were mailings from Sigillito's office to specific victim-lenders enclosing of loan agreements which are the subject of the fraudulent investment scheme.

The scheme described in the indictment involved numerous fraudulent misrepresentations and omissions of material fact to victim-lenders, in order to induce them into loaning money to co-defendant, Smith and his businesses. Many lenders were targeted to invest or loan money in this scheme because of the large amount of retirement funds they had accumulated which were available for investment. This aspect of the scheme was more specifically described in paragraph 14 of count one of the indictment:

> Many lenders lent funds which had been saved for retirement and were held in Individual Retirement Accounts ("IRA"). IRA funds were usually held by IRA custodians or trust companies, including Allegiant Bank and Trust Co. in St. Louis, Missouri; Millenium Trust Company in Illinois; and Enterprise Bank & Trust Company in St. Louis, Missouri. Many IRA lenders let their "interest" accrue and also rolled their loans over annually for years, each time receiving a signed loan agreement for a new, larger amount. Thus, many IRA lenders were led to believe that their IRA accounts were growing and that they could be relied upon in retirement. Even though the loans were short-term, for periods of one year, **SIGILLITO** referred to IRA lenders as "long-term" lenders who would not need to be repaid or paid interest for several years. In addition, even many non-IRA lenders let their "interest" accrue and rolled their investments over annually. Still other non-IRA lenders chose to receive periodic interest payments regardless of whether they rolled loans over.

The mailing of monthly statements from Enterprise Bank & Trust alleged in counts 10 through 13 were an essential part of the scheme that recruited investors and their retirement savings. The statements were also essential to "lulling" investors into thinking their investments were safe and growing.

2

ARGUMENT

The mailing of monthly statements from Enterprise Bank & Trust to victim-lenders which stated the amounts of their BLP loans was in furtherance of an essential step in the <u>fraudulent investment scheme.</u>

Sigillito argues that counts 10 through 15 should be dismissed because the substantive mail fraud counts do not include mailings that were in furtherance of some essential step in the scheme or for the purpose of executing the scheme. The mailings Sigillito questions were from Enterprise Bank & Trust and consisted of monthly statements containing the amounts of loans a particular victim-lender had invested in the BLP.[1] Sigillito argues that the mailings were innocent mailings that were not caused by him and that they would have occurred regardless of the alleged scheme. Enterprise Bank & Trust's mailing monthly statements to the victim-lenders was in furtherance of an essential step in the scheme to defraud BLP investors.

Whether a particular mailing was made in furtherance of an essential step in a scheme to defraud is a factual question, not a question of law. *United States v. Freitag*, 768 F.2d 240, 244 (8th Cir. 1985); *see also United States v. Reed*, 47 F.3d 288, 289-90 (8th Cir. 1995) (finding mailing of bank statements regarding attorney trust account were incident to an essential part of mail fraud scheme, even though defendant claimed the evidence was insufficient as a matter of law). As such, defendant's motion is premature. At the end of the trial, the question before the Court will be whether, based upon the evidence actually presented at trial, a reasonable jury could conclude that the mailings were in furtherance of some essential step in the scheme. There

---

[1] Counts 14 and 15 are based on mailings of loan agreements from Sigillito's business, MTSA, to particular victim-lenders. Sigillito's motion to dismiss does not attack the substance of these mailings, and it appears to be an oversight in his motion to include counts 14 and 15 as they do not involve the mailings he questions from Enterprise Bank & Trust. Thus, for purposes of responding to his motion the government will only address Sigillito's claims as they relate to Counts 10 through 13, which involve the Enterprise Bank & Trust mailings of monthly statements.

has not yet been a trial, but the Government will prove at trial that these mailings were in furtherance of the scheme.

"A mailing relied upon as a predicate for a mail fraud charge must be made 'in furtherance of some essential step in the scheme.'" *United States v. Fiorito*, 640 F.3d 338, 347 (8th Cir. 2011) (quoting *United States v. French*, 88 F.3d 686, 688 (8th Cir. 1996)). The mailing may also be "'for the purpose of executing [ ] the scheme,'" *Id.* (quoting *Kann v. United States*, 323 U.S. 88, 93 (1944)). "However, 'to be part of the execution of the fraud, . . . the use of the mails need not be an essential element of the scheme.'" *Id.* (quoting *Schmuck v. United States*, 489 U.S. 705, 710 (1989)). "It is sufficient if the mailing is 'incident to an essential part of the scheme.'" *Id.* (quoting *Pereira v. United States*, 347 U.S. 1, 8 (1954)). It is also sufficient if the mailing is 'a step in [the] plot.'" *Id.* (quoting *Badders v. United States*, 240 U.S. 391, 394 (1916)). Enterprise Bank & Trust's mailing monthly statements to the victim-lenders was certainly incident to an essential part of the scheme or a step in the plot to defraud BLP investors.

The defendants' use of an institutional custodian such as Enterprise Bank & Trust was not merely incidental to the fraudulent scheme, nor would the mailings have occurred regardless of the scheme as Sigillito argues. The defendants' ability to offer potential investors the benefit of loaning their funds held in IRAs opened up a large source of money to bring into the BLP and kept the ongoing fraudulent investment scheme afloat. Many BLP investors had their money in retirement accounts that could not be removed and invested in other investments without a tax penalty. The defendants themselves could not serve as custodians for IRA accounts, so it was critical to find an institutional custodian that would serve as a custodian in order to open up a large segment of potential investors and their retirement funds. Thus, it was critical that Enterprise Bank & Trust and its predecessors perform the role of an institutional custodian over

4

IRA accounts.

The defendants purposely sought out Enterprise Bank & Trust to perform the key role as custodian for investors who wished to loan their retirement funds into the BLP.  Prior to Enterprise Bank & Trust, the defendants used other custodians, such as Allegiant Bank and Trust Co. and Millennium Trust Company.  When these companies refused to continue as custodian for the BLP loans without additional information about the loans, the defendants were forced to use Enterprise Bank & Trust.  Additionally, many victim-lenders had to transfer their IRA's from different institutional custodians to Enterprise Bank & Trust in order to become lenders in the BLP.  BLP IRA investors were required by Sigillito to place their accounts with Enterprise Bank & Trust as the custodian.  Thus, the Enterprise Bank & Trust mailings would not have occurred regardless of the victim-lenders' placing their IRA funds into the BLP.  Enterprise Bank & Trust mailings allowed the fraudulent nature of the BLP to be facilitated and concealed for an additional period of time.

An institutional custodian like Enterprise Bank & Trust lent credence to the BLP, and a significant part of that was the ability of BLP investors to see the amount of their loans growing on their periodic statements.  The statements were not "innocent mailings" as Sigillito claims.  The statements lulled the victim-lenders into believing that their funds were actually in their accounts, growing and available to withdraw if needed it.  This further lulled these victim-lenders.  Sigillito and his co-conspirators' use of an institutional custodian also gave the victim-lenders the false impression that there was someone verifying the existence of their money in their accounts on a regular basis.

Sigillito claims that the monthly statements pertained only to loans already made and as such they can not be in furtherance of the fraudulent scheme.  "[M]ailings which occur after the receipt of goods obtained by a fraudulent scheme 'are within the statute if they were designed to

5

lull the victims into a false sense of security, postpone their ultimate complaint to the authorities, and therefore make the apprehension of the defendants less likely than if no mailings had taken place.' " *Fiorito*, 640 F.3d at 348 (quoting, *United States v. Lane*, 474 U.S. 438, 451–52 (1986)). The BLP was not a one-shot deal; it was an ongoing fraudulent investment scheme that spanned 10 years and relied on many investors choosing to "roll-over" their loans from year to year and also "roll-up" their interest in order to go undetected for so long. The statements from an institutional custodian that were mailed to the victim-lenders showed a dollar amount in their accounts. These certainly lulled the victim-lenders into a false sense of security that their BLP investments were legitimate and safe. If prior lenders got suspicious and demanded repayment, the BLP would have collapsed sooner than it did. If the victim-lenders who lent their IRA funds to the BLP did not receive their statements showing a dollar amount that corresponded to what they believed they had invested, the victim-lenders certainly would have been more likely to come forward to authorities before they ultimately did.

In a similar case from the Seventh Circuit, *United States v. Ashman*, the defendants sought to have declared as insufficient (after a trial, not a motion to dismiss) mailing of statements that confirmed the execution of trades to customers. 979 F.2d 469, 481 (7th Cir. 1993). The defendants argued that the mailings "did not further the scheme because (1) the mailings occurred after the alleged fraud had been completed; (2) they were not material to the fraud; (3) the mailings were required by law; and (4) the information provided by the mailings was entirely accurate." *Id.* The court found that "the mailings were accurate-that is, that they listed the prices obtained for the customers-and that the fraud already was complete does not undermine our belief that the confirmations in the instant case furthered the scheme by <u>lulling</u> customers into believing that nothing was wrong with the execution of their orders." *Id.* at 482. (emphasis added).

6

While the statements of the BLP IRA accounts may have been accurate in that they listed the amounts of loans, plus any "rolled-over" principal and "rolled-up" interest, that does not diminish the effect on the victim-lenders of lulling them into a belief that their retirement funds were verifiable and accessible in their account. Additionally, the BLP was an ongoing fraudulent investment scheme that depended on many victim-lenders choosing to "roll-over" their loans for an additional period of time and "rolling-up" their interest, rather than choosing to take payment of their principal and interest at the end of each period. As such, the fraud was not complete at the time the first loan was made, but it <u>continued</u> as each victim-lender was convinced to keep their money in the BLP rather than take it out. The monthly statements lulled the victim-lenders into believing that nothing was wrong with their investment and therefore they continued to keep their money in the BLP.

Much like the statements in *Ashman*, the Enterprise Bank & Trust monthly statements would not have been sent absent the defendants' fraudulent scheme. The court in *Ashman* found that "[t]he confirmations were the direct result of fraudulent trading. Had the defendants not executed the arranged transactions, those specific trades would have not occurred, obviating the need for any confirmation. Absent the defendants' fraud, it is quite likely that the same transmissions would not have been sent." *Id.* at 483. Sigillito and his co-conspirators purposely sought out Enterprise Bank & Trust to be used as an institutional custodian to further the fraudulent scheme by bringing potential investors' IRA funds into the BLP. If the defendants had not fraudulently induced the investors to become BLP lenders by placing their IRA funds into the BLP, the custodianship of the particular victim-lenders IRA accounts would not have been transferred to Enterprise Bank & Trust. Thus, there would have been no need for the statements to be mailed.

7

CONCLUSION

The defendant's use of Enterprise Bank & Trust as an institutional custodian played an important role in bringing additional investors with retirement funds into the BLP.  To those investors, the receipt of statements was critical to their belief in the legitimacy of the BLP and it lulled them into believing that their money was in their account and accessible on a monthly basis.  For the foregoing reasons, the government respectfully requests that defendant's motion to dismiss Counts 10 through 15 be denied.

>Respectfully submitted,
>
>ERIC H. HOLDER, JR.
>United States Attorney General
>
>BETH PHILLIPS
>United States Attorney
>WESTERN DISTRICT OF MISSOURI
>
>  *s/ Jess E. Michaelsen*
>JESS E. MICHAELSEN, #52253
>Special Attorney to the United States Attorney General
>Charles Evans Whittaker Courthouse
>400 East Ninth Street, Fifth Floor
>Kansas City, Missouri  64106
>
>  *s/ Steven E. Holtshouser*
>STEVEN E. HOLTSHOUSER, #24277
>Special Attorney to the United States Attorney General
>111  South 10th Street, Room 20.333
>St. Louis, Missouri  63102
>
>  *s/ Richard E. Finneran*
>RICHARD E. FINNERAN, #60768
>Special Attorney to the United States Attorney General
>111  South 10th Street, Room 20.333
>St. Louis, Missouri  63102

## CERTIFICATE OF SERVICE

I hereby certify that on October 21, 2011, the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon the following:

**Douglas P. Roller**
dprcrimlaw@aol.com

  *s/ Jess E. Michaelsen*
JESS E. MICHAELSEN, #52253
Special Attorney to the United States Attorney General
Charles Evans Whittaker Courthouse
400 East Ninth Street, Fifth Floor
Kansas City, Missouri  64106

  *s/ Steven E. Holtshouser*
STEVEN E. HOLTSHOUSER, #24277
Special Attorney to the United States Attorney General
111  South 10th Street, Room 20.333
St. Louis, Missouri  63102

  *s/ Richard E. Finneran*
RICHARD E. FINNERAN, #60768
Special Attorney to the United States Attorney General
111  South 10th Street, Room 20.333
St. Louis, Missouri  63102